<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ERMELINDA ELEZAJ,<br><br>       Plaintiff,<br><br>    v.<br><br>ALEJANDRO MAYORKAS, *et al.*,<br><br>       Defendants. | Case No. 2:24-cv-00935 (BRM) (LDW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

  Before this Court is a Motion to Dismiss ("Motion") (ECF No. 11) Plaintiff Ermelinda Elezaj's ("Elezaj" or "Plaintiff") Complaint ("Complaint") (ECF No. 1) by Defendants Alejandro Mayorkas ("Mayorkas"), John Thompson ("Thompson"), Ur M. Jaddou ("Jaddou") and Merrick Brian Garland ("Garland") (collectively, "the Government"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Elezaj opposes the Motion (ECF No. 12), and the Government filed a reply (ECF No. 12). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, the Government's Motion to Dismiss (ECF No. 11) is **GRANTED** without prejudice on all counts.

  **I.**  **BACKGROUND**

  For purposes of this Motion, the Court accepts the factual allegations in the complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Philips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to*

1

*or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996). Moreover, the Court draws upon the Government's moving papers as well as matters of public record "of which a court may properly take judicial notice" to fill in the facts regarding the USCIS asylum process. *Jamoussian v. Blinken*, Civ. No. 21-10980, 2022 WL 538424, at *1 (D.N.J. Feb. 23, 2022).

### A. Factual Background and Procedural History

Plaintiff Elezaj allegedly filed a completed Form I-589, which is a filing for an affirmative asylum, on April 16, 2020. (ECF No. 1 ¶ 8.) Elezaj alleges the reinstatement of the "Last In, First Out" rule—an approach which the United States Customs and Immigration Service ("USCIS") contends allows meritorious asylum applications to be adjudicated quickly—was a significant factor upon which she relied in applying for asylum. (*Id.*) Elezaj further alleges she received an Acknowledgement of Receipt from USCIS on April 20, 2020. (*Id.* at ¶ 9.) As of the date on which Plaintiff filed her Complaint, 1404 days had passed since Elezaj submitted her Form I-589, yet USCIS has purportedly taken no action. (*Id.* at ¶¶ 10–11.) Because this delay has allegedly created great uncertainty that has caused considerable emotional and financial injury, Plaintiff asserts she and her family cannot plan for their future. (*Id.* at ¶ 17.) Plaintiff has also expended extra resources, including time and money, in attempts to see this case through to final adjudication. (*Id.* at ¶ 18.) Between September 18, 2024, and January 30, 2025, the Government submitted four letters notifying the Court of recent decisions with nearly identical facts which the Government argues support dismissal in this case. (ECF Nos. 14–17.)

### B. Statutory and Regulatory Framework of U.S. Asylum System, the Extensive Backlog of Applications, and the "Last Out, First In" System[1]

Under the Immigration and Nationality Act ("INA"), noncitizens present in the United States can apply for asylum status. (ECF No. 11 at 10); *see* 8 U.S.C. § 1158(a)(1). Whether applying for asylum affirmatively by filing a Form I-589 with USCIS or defensively during removal proceedings in immigration court, applicants must demonstrate an unwillingness or inability to return to his or her home country due to actual past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. (ECF No. 11 at 10); *see* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B). The INA allegedly vests USCIS with broad discretion to regulate the asylum process and provides that applicants should be given an initial interview within 45 days and a final adjudication within 180 days of filing unless certain "exceptional circumstances" exist. (ECF No. 11 at 10.); *see* 8 U.S.C. § 1158(d)(5). However, the statute allegedly clarifies that no applicant may sue to enforce these deadlines as the authority and discretion in processing asylum applications rests with USCIS. (ECF No. 11 at 11); 8 U.S.C. § 1158(d)(7) ("Nothing [in subsection d] shall be construed to create any substantive or procedural right or benefit that is legally enforceable against the United States or its agencies or officers or any other person."); *see* 8 C.F.R. § 208.2(a).

Many asylum applications remain pending for several years, which prompted Congress and the judiciary to afford applicants eligibility to seek several important benefits, including: (1) applicants may remain in the United States without fear of removal while their application is pending, *see Xu v. Cissna*, 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020); (2) upon filing, applicants do not accrue any more days of "unlawful presence" for purposes of future admissibility and are

---

[1] The Court relies on the Government's Opposition for this subsection to provide relevant context for the asylum process in the United States.

3

deemed "lawfully present" in the United States for purposes of applying for certain benefits, 8 U.S.C. § 1182(a)(9)(B)(iii)(II); 8 C.F.R. § 1.3(a)(5); (3) applicants may seek advanced parole for travel authorization to leave the United States under certain conditions, including urgent humanitarian reasons, *see* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 208.8; and (4) applicants may apply for employment authorization within 150 days of filing, USCIS is generally required to act on such applications within 30 days, and such authorization may be renewed for the entire period during which an I-589 remains pending, *see* 8 C.F.R. § 208.7(b).

USCIS has allegedly seen a significant increase in asylum applications in recent years, including many applications which are meritless or otherwise frivolous but were nonetheless filed to take advantage of the various benefits and protections referenced above. (ECF No. 11 at 12.) This trend has purportedly contributed to a significant backlog in the processing of these applications. (*Id.*) In 1995, the Immigration and Naturalization Service ("INS"), which was at that time responsible for processing asylum applications, was allegedly inundated with over 400,000 cases and began implementing a "Last In, First Out" or "LIFO" system. (*Id.*) Through this system—which gave priority to the newest cases and, critically, gave all applicants notice that meritless applications would risk quick resolution and therefore any efforts to obtain temporary benefits would be fruitless—the number of applications in the backlog was purportedly reduced to 4,200 by 2013. (*Id.* at 13.)

In 2013, the USCIS Asylum Division allegedly began diverting resources away from affirmative to defensive asylum applications due to a spike in foreign nationals entering the United States who expressed a fear of returning to their home countries as well as an increase in asylum claims from unaccompanied alien children ("UACs"). (*Id.* at 13–14.) The following year, given

4

diminished manpower, USCIS allegedly moved to a "first in, first out" ("FIFO") system resulting in a "crisis-level backlog" of 311,000 pending applications within five years. (*Id.* at 14.)

On January 21, 2018, USCIS purportedly returned to the LIFO system and is still applying it today. (*Id.* at 14–15.) USCIS allegedly schedules applications using a three-tiered priority system, first considering applicants who had their interviews rescheduled either at their request or by USCIS, followed by applicants whose I-589 forms had been pending for 21 days or less, and finally all other pending affirmative applications. (*Id.* at 15.) Interviews for affirmative asylum applicants are allegedly scheduled either in line with the LIFO approach or in chronological order by those USCIS officers specifically assigned to work through the backlog, starting with the oldest pending applications. (*Id.* at 15–16.) Applicants may allegedly request expedited adjudication if they believe their case should be reviewed outside the three-tiered system. (*Id.*) USCIS allegedly has complete discretion in considering these requests and does so on an individualized basis based on several factors, including "[s]evere financial loss," "urgent humanitarian reasons," and "U.S. government interests." (*Id.*) The return to the LIFO system purportedly yielded both a decrease in asylum applications between 2017 and 2021 and a decline in the backlog's rate of increase. (*Id.*)

Despite the best efforts of USCIS to manage its asylum application system efficiently, several conditions outside its control have purportedly resulted in an enduring backlog. (*Id.* at 17.) All asylum offices were allegedly closed for two months and operated at a reduced capacity thereafter because of the COVID-19 pandemic. (*Id.*) And, beginning in 2022, USCIS was allegedly forced to offset its already-high caseload with a wave of emergent priorities, including processing 221,000 new applications in addition to border screenings, UAC applications, and applications through Operation Allies Welcome—the program accelerating certain Afghan parolees'

5

applications. (*Id.*) To date, USCIS allegedly continues to use LIFO to address the backlog and review asylum applications as quickly as possible. (*Id.*)

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, Civ. A. No. 12-3922, 2013 WL 1163483, at *2 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994)). A motion to dismiss under Rule 12(b)(1) challenging the Court's subject matter jurisdiction asserts the Court lacks "authority or competence to hear and decide the case before it." *Northlight Harbor, LLC v. United States*, 561 F. Supp. 2d 517, 520 (D.N.J. 2008) (citing CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5B FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. 2004)). Plaintiff bears the burden of pleading that jurisdiction is appropriate. *Id.* at 521; *see also Wright v. N.J./Dep't of Educ.*, 115 F. Supp. 3d 490, 495 (D.N.J. 2015) ("It is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction in order to defeat a motion under Rule 12(b)(1)."). In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief, but rather on whether the court has jurisdiction to hear the claim and grant relief. *See Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 445 (D.N.J. 2002) (citing *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000)).

The court is tasked with determining "whether [it is] dealing with a facial or factual attack to jurisdiction. If . . . facial [], the court looks only at the allegations in the pleadings and does so

in the light most favorable to the plaintiff." *United States ex rel. FLFMC, LLC v. TFH Publ'ns, Inc.*, 855 F. Supp. 2d 300, 304 (D.N.J. 2012) (quoting *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011)). A factual attack, on the other hand, "concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." *Id.* (quoting *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)). Moreover, the standard of review for a facial Rule 12(b)(1) attack is the same as one under 12(b)(6). *Id.*

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Id.* at 348. "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (alteration in original) (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)).

The Government here asserts a facial 12(b)(1) challenge given they do not raise arguments concerning any of the underlying facts but rather focus exclusively on deficiencies in the pleadings. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228 ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

7

detailed factual allegations."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022). Furthermore, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (emphasis added).

8

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* at 677. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

9

### III. DECISION

Plaintiff's Complaint comes from an understandable frustration with the slow review process of affirmative asylum applications. (ECF No. 1 ¶¶ 10–11.) Elezaj seeks to compel the Government to more efficiently resolve her application under the Mandamus Act and the Administrative Procedures Act, and requests other relief under the Declaratory Judgement Act and the Equal Access to Justice Act. (*Id.* at ¶¶ 29, 31, 35, 39.) In moving to dismiss, the Government argues dismissal of all Counts is warranted because the Court does not have subject matter jurisdiction to hear the Mandamus Act claim and Plaintiff fails to state a claim for relief under the Administrative Procedures Act ("APA"). (ECF No. 11 at 9.)

#### A. Mandamus Act, 28 U.S.C. § 1361 – Count I

The Government moves to dismiss the Complaint on the ground that the Court lacks subject matter jurisdiction over the claim; specifically, the Government argues Elezaj does not satisfy any of the three required statutory elements for jurisdiction under the Act because (1) she does not have "a clear and indisputable right" to relief; (2) the government agency or official, here USCIS, does not have a clear duty to act within 180 days; and (3) there are several adequate alternative remedies which Elezaj has not yet exhausted. (ECF No. 11 at 18–22.) In her Opposition, Plaintiff contends the Government incorrectly assesses the requirements for jurisdiction under the Mandamus Act. (ECF No. 12 ¶¶ 20, 30–31.) Plaintiff asserts she can show a "clear and indisputable right" to relief because she falls within the "zone of interest" of the INA, which Plaintiff asserts is the appropriate test. (*Id.* at ¶ 24.) Furthermore, the timeline in 8 U.S.C. § 1158(d)(5)(A) is not "aspirational," according to Plaintiff, but instead establishes a clear duty to act within 180 days of the filing of an asylum application. (*Id.* at ¶¶ 29–30.)

In its Reply, the Government emphasizes a recent decision from the District of New Jersey in which Judge Salas noted "8 U.S.C. § 1158(d)(7) expressly does not create a legally enforceable right or benefit against any officer of the United States or any agency" to persuade this Court to dismiss the Mandamus claim on similar grounds. (ECF No. 13 at 3–4.) Moreover, the Government advances the argument that, although the INA does indeed include a timeframe within which applications are to be adjudicated, Plaintiff failed to address the offramp for "exceptional circumstances" written into the statute which the Government contends applies to the current reality of the asylum system. (*Id.* at 4–5.) Finally, the Government points to Plaintiff's own position that the APA offers a remedy for unreasonably delayed agency action as evidence that alternative remedies exist, and because Plaintiff cannot meet the third requirement, the Mandamus claim must be dismissed for lack of subject matter jurisdiction. (*Id.* at 5.)

The Mandamus Act is an exceptional remedial statute that provides "original jurisdiction of any action" in which a plaintiff seeks "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. According to the Supreme Court, "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). A plaintiff may only qualify for Mandamus relief by showing three essential elements: "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Temple Univ. Hosp., Inc. v. U.S. Dep't. of Health & Human Serv.*, 2 F.4th 121, 132 (3d Cir. 2021); *see also Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989) (defining the second factor as requiring for a showing of "a clear abuse of discretion or conduct amounting to usurpation of . . . power"). Several Third Circuit cases have explained failure to satisfy the three elements deprives a court of jurisdiction

11

over a mandamus claim. *See Temple*, 2 F.4th at 132; *see also Soobzokov v. Att'y Gen. of U.S.*, 515 F. App'x 98, 101 (3d Cir. 2013) (explaining plaintiff seeking to force defendants, including the U.S. Attorney General, to disclose results of their investigation into his father's murder failed to show a clear and indisputable right to the relief sought because agencies have broad discretion over enforcement decisions).

Here, Plaintiff contends she is entitled to relief based on the lapsed timeframe in 8 U.S.C. § 1158 but is forestalled by subsection (d)(7), which explicitly states "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." The Court agrees with Judge Salas' recent opinion; namely, courts in the Third Circuit have consistently held mandamus relief to be unavailable to compel action under a statute that itself precludes a private right of action. *See Ahmad v. U.S. Citizenship & Immigration Servs.*, Civ. A. No. 23-3332, 2024 WL 3272832, at *4 (D.N.J. July 2, 2024); *Alvarez v. Raufer*, Civ. A. No. 19-3155, 2020 WL 5210992, at *2 (E.D. Pa. Sept. 1, 2020); *see also Banks v. U.S. Probation Dep't for W. Dist. of Pa.*, 567 F. App'x 71, 74 (3d Cir. 2014) (affirming that plaintiff could not show a private right of action or a duty to act); *Baranoski v. U.S. Att'y's Off.*, 215 F. App'x 155, 156 (3d Cir. 2007) (upholding a finding of the district court that plaintiff did not show a clear and indisputable right to relief to render mandamus claim appropriate). Thus, given Elezaj must show a clear and indisputable right to relief under *Temple*, and given 8 U.S.C. § 1158(d)(7) explicitly and unambiguously deprives private litigants a cause of action, the Court finds Plaintiff fails to show a clear right to relief under the Mandamus Act.

Furthermore, the Court agrees with the Government's position that the availability of a remedy under another statute plainly obviates the need for extraordinary mandamus relief. Seeking

relief under another statute deprives the judiciary of jurisdiction because the third requirement of exhaustion cannot be satisfied. Plaintiff lays bare the inappropriateness of her mandamus claim by seeking redress under the APA in Count II. (*See* ECF No. 1 ¶ 31.) Additionally, in its original moving papers, the Government notes alternative remedies are available for asylum applicants seeking review outside of the three-tiered priority system for scheduling interviews, including applying for expedited adjudication. (*See* ECF No. 11 at 15.) However, neither the Complaint nor Plaintiff's Opposition demonstrate Elezaj exhausted those remedies by showing, for example, that she applied for expedited review. Elezaj therefore fails to show the Act's minimum jurisdictional requirements are satisfied. Accordingly, the Government's Motion to Dismiss Count I is **GRANTED** without prejudice for lack of subject matter jurisdiction.

### B. Administrative Procedures Act, 5 U.S.C. § 555 and § 702 et seq. – Count II

In moving to dismiss all counts, the Government disputes the delay for which Plaintiff seeks relief is unreasonable, and argue Plaintiff's lack of a clear and indisputable right to the relief requested precludes finding the USCIS "failed to take a discrete action that it is *required* to take." (ECF No. 11 at 22) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis added)). In her Opposition, Elezaj contends she meets all four factors considered in the Third Circuit for evaluating the reasonableness of administrative delay (ECF No. 12 ¶¶ 47–50, 63–64), which the Government again disputes in its Reply (ECF No. 13 at 6–8).

Where an agency is unreasonably delayed in performing some action, the APA provides a private cause of action, 5 U.S.C. § 555(b), which is assessed in the Third Circuit with a four-factor balancing test:

> First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act. Second, the reasonableness of the delay should be judged in the context of the statute authorizing the agency's action. Third, the court should

> assess the consequences of the agency's delay. Fourth, the court should consider any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or the need to prioritize in the face of limited resources.

*Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 123 (3d Cir. 1998). Regarding the first factor, the Supreme Court has held the passage of time alone cannot justify a claim of unreasonable delay. *See Immigr. & Naturalization Servs. v. Miranda*, 458 U.S. 14, 18–19 (1982). Additionally, Courts across the country have declined to find delays of up to five years unreasonable. *See Jamoussian*, 2022 WL 538424, at *2 ("The case law, without drawing any bright lines, has found that delays of three to five years are not unreasonable—even before the COVID pandemic hit."); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (citing a string of cases illustrating periods of up to ten years of delay may be reasonable in the immigration context); *Yavari v. Pompeo*, Case No. 2:19-cv-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").

On reasonableness judged within the context of the statute, courts have investigated Congress's statutory intent and consistently found that the decision not to include a statutory right of action to enforce the timetable in the statute "render[s] [the timetable] non-binding." *Ahmad*, 2024 WL 3272832, at *6 (quoting *Baisheng Chen v. Wolf*, No. 19-cv-9951, 2020 WL 6825681, at *5 (S.D.N.Y. Nov. 20, 2020)); *see also Mutlu v. Mayorkas*, Civ. A. No. 23-22176, 2024 WL 4117329, at *3 (D.N.J. Sept. 9, 2024) ("Because these timing requirements are not mandatory, this second factor favors Defendants."); *accord Liz v. Gonzales*, Civ. A. No. 06-5911, 2007 WL

1303000, at *4 (D.N.J. May 3, 2007) (explaining, in context of I-485 application,[2] the lack of "both a statutory time period for adjudication and an explicit provision granting applicants a right to judicial review" indicates lack of congressional intent to limit agency discretion). Moreover, the consequences of the agency's delay must be quite severe as "painful consequences of [] delay are inherent in our immigration system." *Ahmad*, 2024 WL 3272832, at *7 (quoting *Azam v. Bitter*, Civ. No. 23-4137, 2024 WL 912516, at *10 (D.N.J. Mar. 4, 2024)). In assessing the fourth factor, courts have consistently called attention to the "limited administrative resources and [] large caseload of asylum applications that have yet to be adjudicated" in finding this factor overwhelmingly favors the agency. *Id.* (citing *Jamoussian*, 2022 WL 538424, at *3).

Here, all four factors weigh in favor of the Government. The Court is persuaded by case law from this District and across the country in finding a four-year delay reasonable, although understandably frustrating. We are further convinced that while the INA does indeed list a specific timeline for the adjudication of asylum applications—providing the initial interview should begin within 45 days of filing and final adjudication should be completed within 180 days, 8 U.S.C. § 1158(d)(5)(A)(ii)–(iii)—the fact that Congress expressly and unambiguously withheld a private right of action to enforce that timeline two subsections later, 8 U.S.C. § 1158(d)(7), indicates the timeline is not mandatory and cannot be enforced by private litigants. Thus, judging reasonableness against the express terms of the statute, the Court finds no unreasonable delay. *See Ahmad*, 2024 WL 3272832, at *6.

Plaintiff alleges she and her family have suffered considerable emotional and financial injury because they cannot plan for their future, and that she has expended extra resources,

---

[2] An I-485 application is an application to USCIS to adjust an immigrant's status to lawful permanent residence status. *Liz*, 2007 WL 1303000, at *1.

including time and money, in attempts to have her case adjudicated. (ECF No. 1 at ¶¶ 17–18.) Unfortunately, and in spite of the Court's understanding of the toll the asylum process can and does take on applicants, "this sort of prejudice[, namely, delay,] is inherent in the asylum application process[.]" *Azam*, 2024 WL 912516, at *10. Indeed, a court in this District has very recently found this third factor weighed against plaintiffs who alleged nearly identical hardships. *See Ahmad*, 2024 WL 3272832, at *7 ("Plaintiffs emphasize that they suffered 'severe emotional, financial, and physical, hardship' and are 'unable to make personal decisions within their family unit.'") The fourth and final factor plainly favors the Government, which points to "funding shortages, application surges, and the lingering impacts from the COVID-19 pandemic, as well as the diversion of [USCIS's] limited staffing resources to high priority tasks such as border screenings, UAC applications, and expedited cases brought by Afghan nationals." (ECF No. 11 at 26.) The Government rightly contends that to grant Plaintiff's request for relief would "accomplish little beyond pushing one application ahead of others equally deserving, scrambling agency priorities and incentivizing litigation." (*Id.* (quoting *Jamoussian*, 2022 WL 538424, at *3).)

Finally, the Government's letters point to highly persuasive case law that counsels in favor of dismissal. (ECF Nos. 14–17.); *see Mutlu v. Mayorkas, et al.*, Civ. A. No. 23-22716, 2024 WL 4117329, at *2 (D.N.J. Sept. 9, 2024) (determining the LIFO approach did not constitute a final agency decision and therefore the Court lacked subject matter jurisdiction under the APA); *Sahan v. Mayorkas, et al.*, Civ. A. No. 23-21147, 2024 WL 4867008, at *4 (D.N.J. Nov. 22, 2024) (explaining a four year delay did not qualify as an unreasonable delay); *Altun v. Mayorkas, et al.*, Civ. A. No. 23-3944, 2024 WL 4882578, at *3–4 (D.N.J. Nov. 25, 2024) (finding no unreasonable delay because all *Oil, Chem* factors favored the Government, delays up to five years are not unreasonable, and plaintiff had an alternative remedy in the APA); *Zengin v. Mayorkas, et al.*, Civ.

A. No. 24-2196, 2025 WL 337594, at *3–4 (D.N.J. Jan. 29, 2025) (same). Accordingly, the Government's Motion to Dismiss Count II is **GRANTED** without prejudice.

### C. Declaratory Judgment Act, 28 U.S.C. § 2201, and Equal Access to Justice Act, 28 U.S.C. § 2412 – Counts III & IV

In her Complaint, Plaintiff seeks additional relief under 28 U.S.C. §§ 2201 and 2412 for a declaration that USCIS has violated its duties under the INA as well as costs and attorney's fees (ECF No. 1 ¶¶ 35, 39.) However, relief under both statutes requires a finding in the moving party's favor of a violation of some other law. *See Ahmad*, 2024 WL 3272832, at *9 (quoting *MedWell, LLC v. Cigna Corp.*, Civ. No. 20-10627, 2021 WL 2010582, at *2 (D.N.J. May 19, 2021) ("[T]he Declaratory Judgment Act 'is not a standalone source of rights, but a procedural vehicle for litigants to seek a declaration of their rights under some other law.'")); *Jose D.M. v. Barr*, 456 F. Supp. 3d 626, 635 n.6 (D.N.J. 2020) (citing 28 U.S.C. § 2412(a)(1), which states costs "may be awarded to the prevailing party"). Given the Court has already determined the Complaint does not entitle Plaintiff to relief under either the Mandamus Act or the APA, "there is no cause of action under which Plaintiff's Declaratory Judgment Act [or Equal Access to Justice Act] claim[s] can proceed." Accordingly, Plaintiff's claims under both statutes must also be dismissed.

### IV. CONCLUSION

For the reasons set forth above, and for good cause having been shown, the Government's Motion to Dismiss (ECF No. 11) is **GRANTED** without prejudice on all counts. An appropriate order follows.

Date: February 3, 2025

/s/ *Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**